# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01161-COA

**WILLIAM JOE RASBERRY**                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:            09/11/2023
TRIAL JUDGE:                 HON. BRAD ASHLEY TOUCHSTONE
COURT FROM WHICH APPEALED:   LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:           HALDON J. KITTRELL
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 03/25/2025
MOTION FOR REHEARING FILED:

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Following a jury trial, William Rasberry was convicted of failing to register as a sex offender and sentenced to serve five years in the custody of the Department of Corrections. On appeal, Rasberry argues that his indictment was defective, that the trial court erred by granting a motion to amend the indictment, and that he received ineffective assistance of counsel. We find no error and affirm Rasberry's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.    Rasberry was convicted of sexual abuse in the first degree in Alabama in 2007. He later pled guilty and was convicted of failing to register as a sex offender in Lamar County

in 2013 and again in 2018.[1]  In 2021, Rasberry was indicted for yet again failing to register as a sex offender.  His indictment alleged that

> on or about April 27, 2020, in Lamar County, Mississippi, [Rasberry] did willfully, unlawfully, feloniously fail to provide registration information with the Mississippi Department of Public Safety as required by Section 45-33-25 and 45-33-33 of the Mississippi Code of 1972, as amended, at a time when [he] had been previously convicted of a sex offense, to wit: Sexual Abuse 1ˢᵗ, a registerable offense, in the Circuit Court of Mobile County, Alabama . . . .

Prior to trial, the State filed a motion to amend the indictment to change "on or about April 27, 2020," to "between April 27, 2020 and July 17, 2020."  The State argued that the amendment was "one of form and not substantive" and "merely correct[ed] a clerical error."  During a pretrial hearing, the court asked whether the motion was opposed, and defense counsel stated, "I don't know that it really matters, but if the State wants that amendment, sure."  The court then granted the State's motion to amend the indictment.

¶3.    Rasberry filed a motion in limine to suppress his statement to an investigator in which he "admitted to residing within Lamar County for over a month before his arrest."  Rasberry argued that he did not waive his *Miranda*[2] rights.  In response, the State argued that during the recorded interview, Rasberry "knowingly and intelligently waived his rights and made a free and voluntary statement . . . about his registration status and whereabouts."  Following a suppression hearing, the trial court denied Rasberry's motion.

¶4.    At the outset of Rasberry's trial, the court instructed the jury that Rasberry stipulated

---

[1] No evidence of Rasberry's prior convictions for failing to register was offered at trial in this case.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

that he had been convicted of "sexual abuse in the first degree" in June 2007 in Alabama.

¶5.    Megan Costilow, director of the state sex offender registry at the Mississippi Department of Public Safety (DPS), testified that sex offenders must register at the sheriff's office in the county in which they intend to reside within three days after they are released from custody or move to the State. The sheriff's office forwards the offender's registration packet to DPS and provides the offender with a receipt of registration, which the offender must take to a DPS driver's license station to obtain a registered sex offender identification card. In addition, offenders are required to re-register if they change addresses or jobs.

¶6.    Costilow testified that Rasberry had registered as a sex offender in Lamar County multiple times. However, there was no record that Rasberry registered anywhere between April 2020 and July 2020. Costilow testified that at that time, "at least nine" DPS driver's license stations were open "Monday through Friday, across the [S]tate." Costilow testified that Rasberry had previously registered as residing at an address on Tully Davis Road in Lamar County in both 2016 and 2018.

¶7.    David Bullock, who oversees sex offender registration for the Lamar County Sheriff's Office, testified that he first registered Rasberry in Lamar County in 2008. In July 2020, Bullock learned that Rasberry was living in Lamar County but had not updated his registration. Bullock testified that the sheriff's office was open and that he continued to register sex offenders in 2020 throughout the COVID-19 pandemic. Bullock interviewed Rasberry on July 17, 2020, after Rasberry was found at his previous address on Tully Davis Road. In the interview, Rasberry acknowledged that the Department of Corrections had

3

released him from custody on April 22, 2020. Rasberry told Bullock that he left a halfway house in Hinds County in June 2020. Rasberry stated that he began living at his parents' house on Tully Davis Road at the "end of June." When Bullock asked Rasberry why he had not registered in Lamar County, Rasberry provided a number of excuses, including that he had tried to call, that he could not use a phone or other electronic devices, that he did not have transportation or money for gas, and that he had a bad heart and could not walk to the sheriff's office. Rasberry did not dispute that he had been in Lamar County without registering for "at least a month, if not more." Based on the interview, Bullock concluded that Rasberry had lived in Lamar County for at least seventeen days—from the end of June until his arrest on July 17, 2020—without registering as a sex offender.

¶8.     After the State rested its case-in-chief, Rasberry rested without testifying or calling any witnesses. The jury found Rasberry guilty of failing to register as a sex offender. The court sentenced Rasberry as a habitual offender to serve five years in the custody of the Department of Corrections. Rasberry filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶9.     On appeal, Rasberry argues (1) that his indictment was defective, (2) that the trial court erred by granting the State's motion to amend the indictment, and (3) that he received ineffective assistance of counsel.

### I.     The Indictment

¶10.    Rasberry argues that his indictment was defective because it failed to allege sufficient

facts to fully and fairly inform him of the charge. The indictment alleged that Rasberry "did willfully, unlawfully, feloniously fail to provide registration information with the Mississippi Department of Public Safety."

¶11. "The validity of an indictment is an issue of law that we review de novo." *Adams v. State*, 350 So. 3d 1116, 1129 (¶39) (Miss. Ct. App. 2022) (citing *Forkner v. State*, 277 So. 3d 946, 948-49 (¶9) (Miss. 2019)). "The ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Id.* (brackets omitted) (quoting *Forkner*, 277 So. 3d at 948-89 (¶9)). "If the indictment 'fully notified the defendant of the nature and cause of the accusation against him and did not prejudice him in his defense,' it is 'not defective.'" *Id.* at 1129-30 (quoting *Forkner*, 277 So. 3d at 949 (¶11)).

¶12. "Defendants in criminal cases have a constitutionally protected right to be informed of the nature and cause of charges brought against them. This requires that an indictment describe with precision and certainty each element of the offense charged." *Lee v. State*, 944 So. 2d 35, 38 (¶7) (Miss. 2006) (citations omitted). "An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶24) (Miss. 2007).

¶13. Rasberry was indicted under Mississippi Code Annotated section 45-33-25 (Rev.

5

2015) and Mississippi Code Annotated section 45-33-33 (Rev. 2015).[3]  Section 45-33-25(1)(a) provided in part that "[a]ny person having a permanent or temporary residence in this state . . . who has been convicted of a registrable offense in this state or another jurisdiction . . . shall register with the responsible agency[4] and [DPS]."  Further, section 45-33-33(1)(a) stated in relevant part:

> The failure of an offender to personally appear at a [DPS] Driver's License Station or to provide any registration or other information, including, but not limited to, initial registration, reregistration, change of address information, change of employment, change of name, required notification to a volunteer organization or any other registration duty or submission of information required by this chapter is a violation of this chapter.

¶14.   Rasberry did not challenge the sufficiency or validity of his indictment in the trial court.  However, "objections to the sufficiency of an indictment may be raised for the first time on appeal."  *Williams v. State*, 169 So. 3d 932, 935 (¶8) (Miss. Ct. App. 2014) (collecting Mississippi Supreme Court cases); *accord Hathorne v. State*, 376 So. 3d 1209, 1214-15 (¶19) (Miss. 2023).

¶15.   In *Williams*, this Court reversed a conviction for failure to register as a sex offender due to a legally insufficient indictment.  *Williams*, 169 So. 3d at 936-37 (¶¶10-11).  In that case, the indictment alleged that the defendant, Williams, "fail[ed] to register or re-register

---

[3] These statutes were amended effective July 8, 2020—during the date range in Rasberry's indictment.  *See* 2020 Miss. Laws ch. 477, §§ 10, 14.  We quote the version in effect at the start of the indictment's date range.  However, Rasberry does not argue that the amendments have any effect on this case.

[4] The "responsible agency" for a person convicted in another state "is both the sheriff of the proposed county of residence and [DPS]."  Miss. Code Ann. § 45-33-23(g)(vii) (Supp. 2019).

as a sex offender" on or about September 4, 2012, in Copiah County. *Id.* at 933 (¶2). At Williams's trial, a probation officer testified that Williams *did* provide his probation officer with a Copiah County address when his supervision was transferred to Copiah County on or about September 4. *See id.* at 933-34 (¶3) & n.3. In a footnote, this Court noted that "[t]he record [was] devoid of any documents or information regarding Williams's underlying conviction or sentence," and we did "not know when Williams was convicted, the county or state of his conviction, or the sentence he received." *Id.* at 934 n.2. We also did not "know whether Williams was properly registered in the county of his conviction." *Id.* At Williams's trial, the evidence suggested that between September 4 and September 18, Williams was not residing at the address he had provided to his probation officer. *See id.* at 933-34 (¶¶3-5) & n.3. However, on appeal, this Court noted that there were "innumerable ways to violate chapter 33" and that it was "impossible to ascertain from Williams's indictment the way in which he violated the chapter, since [his] indictment provide[d] no specific facts, much less the essential facts, as to how he allegedly violated the chapter." *Id.* at 936 (¶10). This Court then concluded:

> We simply cannot ascertain, from Williams's indictment and the evidence presented at trial, the basis on which he was convicted. We do not know whether his conviction was for knowingly giving a false address upon registration; giving a proper address, but wilfully failing to reside at that address; or failing to personally appear before the Department of Public Safety Driver's License Station to register or reregister. Moreover, if Williams was properly registered in his county of conviction, he was required to reregister in Copiah County a minimum of ten days before he actually moved there, pursuant to section 45-33-29(1). If that is the case, his absence from the residence on September 10, 2012, would have been of no significance. Without giving specific facts, Williams's indictment provided no notice as to how he failed to register or reregister as a sex offender as required by the

7

provisions of chapter 33; thus, he could not have prepared a defense without knowing what act or omission he needed to defend. Additionally, the lack of factual specificity in his indictment exposes Williams to the possibility of again being prosecuted for the same action or inaction.

*Id.* at 937 (¶10).

¶16. Although Rasberry's indictment also lacks specificity, this case is distinguishable from *Williams*. There is no suggestion that Rasberry violated the statute by providing a false address to the proper authorities or by wilfully failing to stay at an address he provided. Nor is there any suggestion that Rasberry was still residing at a properly registered address in another county. Rather, Rasberry confessed he had resided in Lamar County for at least seventeen days without providing his Lamar County address to *any* proper authority.

¶17. In *Tran v. State*, 962 So. 2d 1237 (Miss. 2007), the Mississippi Supreme Court found that an indictment for money laundering was defective because it failed to specify what underlying "unlawful activity" (e.g., drug trafficking) from which the laundered funds were derived. *Id.* at 1246 (¶35). However, the Court also concluded that "[t]he defense had ample notice" from his interrogation by law enforcement, disclosures in discovery, and related forfeiture proceedings "that the charge of money laundering was based on the State's claim that the money was the product of drug trafficking." *Id.* at 1248 (¶42). Because it was clear that the defendant "had fair notice and an opportunity to prepare a defense" to the charge, the Court held that the lack of specificity in his indictment was "harmless error." *Id.* (¶¶43-44).

¶18. Likewise, the indictment in this case fails to specify the particular manner in which Rasberry allegedly violated the sex offender registration statutes. However, based on his interrogation by law enforcement and discovery, Rasberry had fair notice of the charges

8

against him and an opportunity to prepare his defense. When Rasberry was arrested, Bullock interrogated him regarding his failure to provide a Lamar County address prior to his arrest, and Rasberry filed a pretrial motion in limine to suppress his confession that he had been living in Lamar County without providing an address. Bullock's arrest report also explained that Rasberry had been arrested for failing to register in Lamar County. From all of this, Rasberry had notice that he was being charged with failing to register and provide an address after he moved to Lamar County, and he had an ample opportunity to prepare a defense. Moreover, Rasberry fails to identify any way in which his defense was prejudiced by his indictment. Accordingly, as in *Tran*, we conclude that the lack of specificity in Rasberry's indictment was, at most, harmless error.

## II.     Amendment to the Indictment

¶19.    Rasberry's original indictment alleged that he failed to register "on or about April 27, 2020." Prior to trial, the State filed a motion to amend the indictment to allege that he failed to register "between April 27, 2020 and July 17, 2020." When the trial court asked defense counsel if the motion was opposed, counsel stated, "I don't know that it really matters, but if the State wants that amendment, *sure*." (Emphasis added).

¶20.    On appeal, however, Rasberry argues that the trial court erred by granting the State's motion because, he contends, "time is an essential element and factor of the crime of failure to register as a sex offender." Rasberry argues that under the original indictment, the State could not prove "if or how he failed to register on or about April 27, 2020." He further asserts that "there was no evidence establishing [his] whereabouts on or about April 27,

2020," and therefore "[t]he evidence presented at trial failed to sustain the charge . . . under the indictment as it originally stood." He therefore argues that the amendment "materially altered [his] defense and the facts that were the essence of the offense."

¶21. In response, the State contends that the issue is procedurally barred because Rasberry consented to the amendment. In the alternative, the State argues the amendment was proper because it was a change in form, not substance.

¶22. We agree with the State that this issue is procedurally barred. Having agreed to the amendment, Rasberry "cannot now complain that the trial court wrongfully amended the indictment." *Tanner v. State*, 20 So. 3d 764, 768 (¶18) (Miss. Ct. App. 2009); *accord Swedenburg v. State*, 807 So. 2d 498, 499 (¶5) (Miss. Ct. App. 2002); *see also Ronk v. State*, 172 So. 3d 1112, 1128 (¶29) (Miss. 2015) (holding that defendant "waived any argument" that a jury instruction "effectively constituted a substantive amendment to his indictment" when he "agreed to the submission of" the instruction).

¶23. Procedural bar notwithstanding, the trial court did not err by allowing the amendment. "The trial court may permit the indictment to be amended, but such amendments may pertain to matters of form only, not matters of substance." *Nations v. State*, 199 So. 3d 1265, 1271 (¶18) (Miss. Ct. App. 2016) (quotation marks, brackets, and ellipses omitted). "An amendment is one of form if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment." *Jones v. State*, 912 So. 2d 973, 976 (¶9) (Miss. 2005). "Amendments of substance include those which change the charge made in the indictment to another crime." *Nations*, 199 So. 3d at 1271 (¶18) (quotation marks

10

omitted). "[T]he ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Forkner*, 277 So. 3d at 948-49 (¶9) (quoting *Colburn v. State*, 201 So. 3d 462, 469 (¶20) (Miss. 2016)). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." *Jones*, 912 So. 2d at 976 (¶9) (quoting *Pool v. State*, 764 So. 2d 440, 443 (¶10) (Miss. 2000)). "Unless time is an essential element or factor in the crime . . . an amendment to change the date on which the offense occurred is one of form only." *Baine v. State*, 604 So. 2d 258, 261 (Miss. 1992).

¶24. Rasberry's primary defense at trial was that the State could not prove where he was before July 17, 2020. In his closing argument, defense counsel asserted that the State could not prove that Rasberry was in Lamar County "long enough to have to register," arguing:

> [The State] want[s] you to assume that after April 2[7], 2020 until July 17th, 2020, for some indefinite period of time, Mr. Rasberry was at his parents' house, and it was long enough for him to have to register. . . . [T]he State doesn't even know where he was. They're just assuming he was there. The State actually asked you to speculate. . . . I submit to you that the State has not proven beyond a reasonable doubt that . . . Rasberry was living in Lamar County long enough to have to register.

In addition, as noted above, Rasberry argues on appeal that because there was no evidence establishing his location on April 27, 2020, he would have been entitled to an acquittal under the original indictment.

¶25. This argument is without merit. Our Supreme Court recently reiterated that the State generally is "not required to prove an exact date," especially when the indictment alleges that

11

the offense occurred "on or about" a certain date. *Robinson v. State*, No. 2023-KA-00773-SCT, 2025 WL 341127, at *3 (¶16) (Miss. Jan. 30, 2025), *motion for reh'g filed* (Feb. 13, 2025). "Rather, the Court has held that 'a period of two months is within reasonable limits of, or reasonably near,' the dates alleged in an indictment, especially when the indictment uses 'on or about' language." *Id.* (quoting *McBride v. State*, 61 So. 3d 138, 150 (¶¶51-52) (Miss. 2011)).

¶26. Here, Rasberry confessed that he began living at his parents' house in Lamar County around the end of June, approximately two months after the on-or-about date alleged in his original indictment. Therefore, based on the evidence presented at trial, Rasberry's *original* indictment was sufficient to support the conviction—i.e., although the amendment was both proper and unopposed, it was not strictly necessary. In addition, the amendment did not undermine Rasberry's defense at trial or alter the substance of the charge. Accordingly, the trial court did not err by granting the State's unopposed motion to amend the indictment.

### III.   Ineffective Assistance of Counsel

¶27. Lastly, Rasberry argues that his trial counsel was ineffective for failing to object to the insufficiency of the indictment or the State's motion to amend the indictment.

¶28. "[A] claim of ineffective assistance of counsel may be raised on direct appeal 'if such issues are based on facts fully apparent from the record.'" *Whittaker v. State*, 262 So. 3d 531, 535 (¶18) (Miss. 2019) (quoting M.R.A.P. 22(b)).[5] "Generally," however, such "claims

---

[5] If an ineffective assistance claim is "based on facts fully apparent from the record" *and* "the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings." M.R.A.P. 22(b).

are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (quotation marks and brackets omitted). In addition, we may address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

¶29. To prevail on a claim of ineffective assistance of counsel, the defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶30. In addition, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation marks omitted).

¶31. For the reasons explained above, we have already concluded that Rasberry was not prejudiced by the lack of specificity in his indictment and that the amendment to the indictment was a proper amendment of form, not substance. It follows that trial counsel did not provide ineffective assistance by not challenging the indictment or by not opposing the amendment.

## CONCLUSION

¶32. Rasberry's conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**